**Borge NIELSEN, Plaintiff,**

v.

**SIOUX TOOLS, INC., Defendant.**

**Civ. No. 3:93CV152 (AVC).**

United States District Court,
D. Connecticut.

Sept. 30, 1994.

James S. Twaddell, Reed D. Rubinstein, Levy & Droney, P.C., Farmington, CT, R. Bartley Halloran, Alfano, Halloran & Flynn, Hartford, CT, for Borge Nielsen.

Julie Harrison, Robert A. Kappel, Jacobi, Kappel, & Case, Milford, CT, for Sioux Tools, Inc.

William C. Eustace, Jeffrey J. Vita, Anderson, Kill, Olick & Oshinsky, New Haven, CT, for William H. Joli.

William C. Eustace, Tracy Alan Saxe, Jeffrey J. Vita, Anderson, Kill, Olick & Oshinsky, New Haven, CT, for Velia R. Joli.

Joseph G. Fortner, Jr., Halloran & Sage, Hartford, CT, Valerie Gay Bataille, Norwich, CT, for Hayes Chevrolet Buick, Inc., Estate of Mary E. Hayes, Michael J. Hayes, executor for Estate of Mary E. Hayes.

Paul Ruszczyk, Dice, Maloney & Lenz, Cheshire, CT, for Philip Bauxbaum, III, Philip Bauxbaum, Jr., 22 Enterprises, Inc.

Bonnie Lynn Amendola, Pepe & Hazard, Michael A. Zizka, LeBoeuf, Lamb, Greene & MacRae, Hartford, CT, for Colchie, Inc., d/b/a Meineke Discount Mufflers, Walter J. Pappas, Pearl E. Pappas.

Philip T. Newbury, Jr., Peter J. Casey, Howd & Ludorf, Hartford, CT, Barry Cope, Martha S. Hollingsworth, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, for American States Ins. Co.

### RULING ON DEFENDANT'S MOTION TO DISMISS

COVELLO, District Judge.

This is an action for a declaratory judgment and damages brought pursuant to the Comprehensive Environmental Response Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). In addition, the complaint alleges a series of common law tort actions.

The defendant moves to dismiss the plaintiff's complaint for lack of personal jurisdiction. The defendant further moves, pursuant to Fed.R.Civ.P. 12(b)(6) that counts two through eight should be dismissed for failure to state a claim upon which relief may be granted and/or because the statute of limitations has lapsed.

For the reasons discussed, *infra*, the motion is granted in part and denied in part.

### FACTS [1]

The defendant, Sioux Tools, Inc., an Iowa Corporation, owned and operated a machine shop and distribution center (the "property") in New Milford, Connecticut, from 1966 to 1980. During this period, the defendant allegedly generated large amounts of hazardous substances, and registered with the United States Environmental Protection Agency ("EPA") as a generator of Code F001 hazardous waste.[2] The plaintiff alleges that the defendant deposited this waste into an underground storage tank located on the property, and in other instances, directly onto the ground.

On October 28, 1980, the defendant sold the property to William H. Joli. The defendant did not inform Joli that it had disposed of hazardous substances on the property, or of the potential threat the hazardous waste posed to the public. After Joli purchased the property, however, he discovered the underground storage tank and cemented the tank cover shut. Joli owned the property for the next four years, and during this time neither stored nor disposed of hazardous substances on the property.

On November 30, 1984, the plaintiff purchased the property from Joli. In 1988, the plaintiff received an offer to purchase the property. Prior to closing, the plaintiff ordered an environmental assessment of the property. The assessment revealed that the

1. Pursuant to *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the allegations of the complaint are accepted as true.

2. Code F001 hazardous waste includes spent halogenated solvents used in degreasing operations, particularly: "Tetrachloroethlene, trichloroethy-

lene ... 1,1,1–trichloroethane, carbon tetrachloride ... all spent solvent mixtures/blends used in degreasing, containing before use, a total of ten percent or more (by volume) of one or more of the above halogenated solvents or those solvents listed in F002, F004, F005 [including toluene]." 40 C.F.R. § 261.31(a).

underground storage tank contained hazardous material and that the tank had leaked, resulting in the contamination of both the soil and groundwater. Further tests revealed that the soil was contaminated with lead, cadmium, chromium, and an assortment of chlorohydrocarbons.[3] The assessment also revealed that the groundwater was contaminated with trichloroethylene, benzene, and toluene. The plaintiff alleges that the defendant was the only owner or operator of the property to generate these hazardous substances.

On January 23, 1990, the plaintiff, in accordance with 42 U.S.C. § 9603, reported the contamination to the National Response Center. On January 24, 1992, the Connecticut Department of Environmental Protection ("DEP") issued order No. SRD–031 directing the plaintiff to take action to determine the nature and extent of the contamination, and to submit a plan of remediation. The plaintiff has incurred National Contingency Plan costs due to the release of these hazardous substances.

### STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief may be granted. *Fischman v. Blue Cross Blue Shield,* 755 F.Supp. 528 (D.Conn.1990). The motion must be decided solely on the facts alleged. *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). In deciding a motion to dismiss, a court must assume all factual allegations in the complaint to be true and must draw reasonable references in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Such motion should be granted only where no set of facts consistent with the allegations could be proven which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78

S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether the plaintiff will prevail, but whether he would have the opportunity to prove his claims. *Id.*

### DISCUSSION

1. **JURISDICTION**

A. *The Connecticut Long Arm Statute*

■ The defendant moves to dismiss the entire complaint on the grounds that the court lacks personal jurisdiction. Specifically, the defendant argues that in order for the court to assert jurisdiction pursuant to the Connecticut long arm statute [4], the "CERCLA liability provision" upon which the count is based [would have to be] tantamount to the commitment of a "tortious act." Since the traditional elements for tort liability are not required to establish a CERCLA violation, the defendant argues, such a violation is not a tort. There is, therefore, no basis upon which to invoke the long arm statute.

The plaintiff contends that the court does have personal jurisdiction because of: 1) the defendant's alleged contamination of soil and groundwater; 2) the defendant's status as an owner/operator of the property; and 3) the defendant's alleged concealment and failure to remediate the contamination, which, individually, constitute "tortious conduct" within the meaning of Conn.Gen.Stat. § 33–411(c).

The first issue presented is whether the defendant's alleged contamination of property soil and groundwater may be construed as "tortious conduct" within the meaning of the Conn.Gen.Stat. § 33–411(c).

Under Connecticut law, the release of pollutants into the environment has given rise to common law tort claims. *See, e.g., Kostyal v. Cass,* 163 Conn. 92, 93, 302 A.2d 121 (1972) (plaintiff alleged that the defendant was liable for the leakage of oil into a well, a

---

**3.** The chlorohydrocarbons found in the soil include: 1,1,1 trichloroethane; tetrachloroethylene; t–1,2 dichloroethylene; 1,2, dichlorobenzene; 1,3, dichlorobenzene; and 1,4 dichlorobenzene.

**4.** Conn.Gen.Stat. § 33–411(c)(4), which sets the parameters for determining the court's jurisdiction over the defendant, states, "[e]very foreign

corporation shall be subject to suit in this state, by a resident of this state ... whether or not such foreign corporation is *transacting or has transacted business* in the state ... on any cause of action arising as follows ... (4) out of tortious conduct in this state whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

nuisance created and maintained by the defendants.); *Filisko v. Bridgeport Hydraulic Co.,* 176 Conn. 33, 404 A.2d 889 (1978) (depositing of materials on property which cause pollution may be the basis of a nuisance claim). In other jurisdictions, cases hold that "the release of a hazardous substance creating an imminent danger to ... property and the environment is in the nature of a tort [for purposes of establishing long arm jurisdiction]." *United States v. Conservation Chemical Corp.,* 619 F.Supp. 162, 245 (D.C.Mo. 1985); *See also Zands v. Nelson,* 797 F.Supp. 805, 815 (S.D.Cal.1992).

In the present action, the court concludes that the defendant's alleged contamination of soil and groundwater may be construed as "tortious conduct" within the meaning of the Connecticut long arm statute. Therefore, the court need not consider the plaintiff's alternate theories for establishing "tortious conduct." Accordingly, the court denies the defendant's motion to dismiss the plaintiff's Count One.

### B. *Personal Jurisdiction and Due Process*

■ The defendant next moves to dismiss the complaint on grounds that the court's exercise of personal jurisdiction violates the defendant's due process rights under the United States Constitution. Specifically, the defendant argues that for purposes of due process, the plaintiff must show that "at the time of service of the complaint," *Connecticut Artcraft Corp. v. Smith,* 574 F.Supp. 626, 530 (D.Conn.1983), the defendant had "minimum contacts" with the state of Connecticut. Since the defendant does not presently maintain an office, resident sales force, employees, telephone or business in Connecticut, the court's assertion of personal jurisdiction is unconstitutional for want of "minimum contacts" with the State of Connecticut.

Further, the defendant argues that since it physically withdrew from Connecticut thirteen years ago, has not had any significant contact with Connecticut since CERCLA was passed, and filed its Certificate of Withdrawal with the Connecticut Secretary of State's Office six years ago, the court's exercise of personal jurisdiction does not comport with "traditional notions of fair play and [substan-tial] justice." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (*citing International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

The plaintiff contends that the defendant does have the required minimum contacts with the state of Connecticut because the defendant, by wrongfully disposing and concealing toxic waste, "caused consequences" within the state so as to trigger an expectation of being haled into court there. *SEC v. Unifund Sal,* 910 F.2d 1028, 1033 (2d Cir.), *reh'g denied,* 917 F.2d 98 (1990). Additionally, compelling the plaintiff to litigate in Iowa, as opposed to demanding that the defendant litigate in Connecticut, violates traditional notions of fair play and substantial justice.

■ In determining whether the exercise of personal jurisdiction in a particular case violates due process, the Supreme Court has provided broad guidance which centers on a court's inquiry into whether the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (1945). The focus for application of this broad standard has been consideration of whether there are "minimum contacts" between the defendant and the forum state. *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In addition to the minimum contacts analysis, the reasonableness of the exercise of jurisdiction in each case will depend upon an evaluation of the interests of the forum state and the plaintiff's interest in obtaining relief. See *World–Wide Volkswagen,* 444 U.S. at 313, 100 S.Ct. at 568 (1980).

The minimum contacts test is satisfied where there is "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). In *International Shoe,* the Court held that "the exercise of the privilege [of

conducting activities within the forum] may give rise to obligations; and, in so far as those obligations arise out of or are connected with the [defendant's] activities within the state, a procedure which requires a corporation to respond to suit ... [can] hardly be said to be undue." *Id.* 326 U.S. at 319, 66 S.Ct. at 160. In determining whether a particular exercise of jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (*quoting Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

The gravamen of the defendant's argument is that, in addition to considering the relationship among the litigation, the forum, and the defendant, the court should take the additional step of examining whether there are continuing contacts with the forum at the time suit is filed. This additional step has never been recognized by the Supreme Court, and has been soundly rejected in other jurisdictions. *See McDaniel v. Armstrong World Industries,* 603 F.Supp. 1337, 1344 (D.D.C.1985); *Steego Corporation v. Ravenal,* 830 F.Supp. 42, 48 (D.Mass.1983); *Boeing Co. Spar Aerospace Products, Ltd.,* 380 F.Supp. 101, 106 (E.D.Pa.1974). Although a contrary result was reached in *Connecticut Artcraft Corp. v. Smith,* 574 F.Supp. 626, 630 (D.Conn.1983) and in *Lachman v. Bank of Louisiana In New Orleans,* 510 F.Supp. 753, 757 (N.D.Ohio 1981), in neither of these cases was the issue squarely before the court. Moreover, neither court provided any substantive analysis to support their conclusions.

In the present case, the defendant transacted business within the state of Connecti-

cut for at least fourteen years, availing itself of the benefits and protection of the laws of Connecticut. Since the defendant's alleged contamination of the property is directly related to the defendant's activities within the state, the defendant has the required minimum contacts with the state of Connecticut. Furthermore, the exercise of jurisdiction is reasonable in this case because the state of Connecticut clearly has an interest in providing a forum for its citizens when injuries manifest themselves after a corporate defendant has ceased activities which relate to the state of Connecticut.

In consideration of the relationship among the defendant, the forum, and the litigation, the court concludes that it comports with "traditional notions of fair play and substantial justice" to hale the defendant into court in the place where it transacted business at the time the injury complained of was taking place and where the injury arose from the defendant's transaction of business.[5] Therefore, the defendants motion to dismiss the complaint for want of personal jurisdiction is denied.

### 2. COUNT TWO: CONN.GEN.STAT. § 22a–452 AND THE APPLICABLE STATUTE OF LIMITATIONS

■ The Defendant moves to dismiss Count Two of the plaintiff's complaint on the ground that the claim is time-barred by the applicable statute of limitations. Specifically, the defendant argues that in accordance with *Electroformers v. Emhart,* 19 CLT 8, 1993 WL 28904 (1993), a claim for reimbursement costs due to environmental contamination brought under Conn.Gen.Stat. § 22a–452 [6] is governed by either the two-year state statute of limitations controlling damages for expo-

---

**5.** *See also* Restatement (Second) of Conflict of Laws § 48 (1971): "A state has power to exercise judicial jurisdiction over a foreign corporation which has done business in the state, but has ceased to do business there at the time when the action is brought, with respect to causes of action arising from the business done in the state."

**6.** Conn.Gen.Stat. § 22a–452 states, "Any person, firm, corporation or municipality, which contains or removes or otherwise mitigates the ef-

fects of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous waste resulting from any discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste shall be entitled to reimbursement from any person, firm, or corporation for the reasonable costs expended for such containment, removal or mitigation .. resulting from the *negligence* or other actions of such person, firm, or corporation." (emphasis added).

sure to hazardous substances,[7] or the three-year state statute of limitations governing tort actions.[8] Therefore, since the instant action was not brought until three and one-half years after the plaintiff discovered the contamination, the action is time barred.

The plaintiff responds that *Electroformers* was wrongly decided, because a suit brought under Conn.Gen.Stat. § 22a–452 is a suit for quasi-contractual restitution, not damages, and is therefore subject to the six-year state statute of limitations governing causes of action in contract.[9] Further, if the two-year statute of limitations is applied, it will frustrate the remedial purposes of the statute, and violate fundamental principles of statutory construction.

The court agrees with the defendant. Conn.Gen.Stat. § 22a–452 does not provide a specified time limit for an action for reimbursement of clean-up costs. In the present case, because the plaintiff does not cite any Connecticut authority holding that Conn.Gen. Stat. § 22a–452 constitutes a suit for quasi-contractual restitution, the court concludes that the cause of action is in fact more akin to one for damages in tort or to one for damages for exposure to hazardous substances. Since the action was brought three and one-half years after the plaintiff discovered the contamination, Count Two is barred by the statute of limitations. Therefore, the defendant's motion to dismiss Count Two is granted.

### 3. COUNT THREE: ULTRAHAZARDOUS ACTIVITY

 The defendant next moves to dismiss Count Three on the grounds that the plaintiff fails to state a claim for strict liability and that the statute of limitations bars the action in any event.

In Count Three, the plaintiff claims that, "[the defendant's] improper storage and disposal of hazardous substances at the property, its contamination of the property soil and groundwater, and its ongoing and continuous failure to remediate constitute abnormally dangerous and/or unnatural uses of the land." [10] The plaintiff also alleges that the defendant "did not warn the buyer that [the defendant] had disposed of hazardous substances on the property [and that the defendant] did not warn the buyer that these hazardous substances were an actual threat to public health." [11]

The plaintiff claims that these allegations constitute a strict liability claim because these "circumstances and conditions" show the defendant's conduct "involved a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous." *Arawana Mills v. United Technologies*, 795 F.Supp. 1238, 1252 (D.Conn. 1992).

The defendant responds that the plaintiff fails to state a claim upon which relief can be granted because the defendant's activities as a tool repair shop cannot support a strict liability claim under Connecticut law.

In order to sustain a claim for strict liability, the plaintiff must prove that certain facts are present:

1) an instrumentality capable of producing harm;

2) circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can

---

7. Conn.Gen.Stat. § 52–577c(b) states, "Notwithstanding the provisions of sections 52–577 and 52–577a, no action to recover *damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture of hazardous pollutant released into the environment shall be brought but within two years* from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered." (emphasis added).

8. Conn.Gen.Stat. § 52–577 states, "No action founded upon a tort shall be brought but *within*

*three years* from the date of the act or omission complained of." (emphasis added).

9. Conn.Gen.Stat. § 52–576(a) states, "No action for an account, or any simple or implied contract, or on any contract in writing, shall be brought but *within six years* after the right of action accrues ..." (emphasis added).

10. Plaintiff's First Amended Complaint, October 19, 1993 at 7.

11. Plaintiff's First Amended Complaint, October 19, 1993 at 4.

be said to be intrinsically dangerous to the personal property of others; and

3) a causal relation between the activity and the injury for which damages are claimed.

*Arawana Mills v. United Technologies,* 795 F.Supp. 1238, 1251 (D.Conn.1992) (*citing Caporale v. C.W. Blakeslee and Sons, Inc.,* 149 Conn. 79, 85, 175 A.2d 561, 564 (1961)). The defendant is disputing the presence of the second of these factors by contending that the challenged activity in this case, improper disposal of hazardous waste, failure to disclose that such waste had been disposed of at the property, and failure to remediate, is not an abnormally dangerous activity.

■ The question of whether an activity is abnormally dangerous is a question of law for a court to decide. *Caporale,* 149 Conn. at 86, 175 A.2d 561; *Green v. Ensign–Bickford Co.,* 25 Conn.App. 479, 485, 595 A.2d 1383, 1387, *certification denied,* 220 Conn. 919, 597 A.2d 341 (1991). Connecticut has traditionally limited the imposition of strict liability in tort to those property owners engaged in such ultrahazardous activities as blasting and pile driving. *Arawana Mills,* 795 F.Supp. at 1251 (1992) (*citing Whitman Hotel Corp. v. Elliot & Watrous Engineering Co.,* 137 Conn. 562, 565, 79 A.2d 591, 593 (1951) (blasting) and *Green v. Ensign–Bickford Co.,* 25 Conn.App. at 482–83, 595 A.2d 1383 (experimental explosions)).

The court declines to extend strict liability to the defendant's activities in the present action, notwithstanding the alleged facts that hazardous substances were released improperly into the soil and groundwater, and the alleged defendant's failure to warn the subsequent buyer or remediate. At least three other Connecticut courts, state and federal, have rejected the notion that the storage and use of hazardous materials, which result in a subsequent release, constitutes an abnormally dangerous activity for which strict liability should be imposed. See *Arawana Mills,* 795 F.Supp. 1238 (D.Conn.1992) (strict liability not extended to metal finishing service shop which handled, stored, and released hazardous substances into the soil and groundwater); *The Stop & Shop Companies, Inc. v. Amerata Hess Corp.,* H–84–454 (MJB), 11 Conn.L.Trib. No. 11, at 1 (D.Conn.1984)

(strict liability not extended where gasoline leaked from underground storage tanks and contaminated subsoil and groundwater because gasoline storage is not an abnormally dangerous or ultrahazardous); *Burns v. Lehigh, Inc.,* 1988 C.S.C.R. 722 (Conn.Sup.Ct. July 12, 1988) (leaking of gasoline into subsurface soil is insufficient to state a cause of action for strict liability).

For the foregoing reasons, the defendant's motion to dismiss Count Three for failure to state a claim is granted.

## 4. COUNT FOUR: STANDING AND THE TORT OF NUISANCE

■ The defendant next moves to dismiss Count Four on grounds that the plaintiff lacks standing to bring a nuisance claim. Specifically, the defendant asserts that an owner of property lacks standing to bring a private nuisance claim against his/her predecessors in possession. *Wiel v. Dictaphone Corp., Inc.* D.N. CV93 03064292S. J.D. of Fairfield at Bridgeport, (Memorandum of Decision on Motion to Strike No. 108, January 12, 1994, Miacco, J.)

The plaintiff responds that courts which have held that an owner of property lacks standing to assert a private nuisance claim against a predecessor in possession, have relied on the doctrine of *caveat emptor.* Since in the present case the complaint can be read to plead wrongful failure to disclose the existence of an environmental problem on the property, *caveat emptor* does not apply, *Masterson v. Atherton,* 149 Conn. 302, 179 A.2d 592 (1962).

In *Wiel,* the court held that an owner of property lacked standing to assert a private nuisance claim against his predecessors in possession. In particular, the court, in reliance on *Nicholson v. Connecticut Half–Way House,* 153 Conn. 507, 510, 218 A.2d 383, 385 (1966), held that such a private nuisance claim "require[s] that the nuisance which is the subject of the plaintiff's suit must be *located on, or emanate from, a neighboring parcel of land." Id.* at 5 (emphasis added.)

Although courts have relied on the doctrine of *caveat emptor* in holding that owner's of property lack standing to bring nui-

sance suits against a predecessor in possession, the plaintiff fails to allege facts in the complaint showing that *caveat emptor* does not apply.[12] Therefore, because the defendant is the plaintiff's predecessor in possession of the property, and not a present neighbor, the court concludes that the plaintiff lacks standing. The defendant's motion to dismiss Count Four is, therefore, granted.

## 5. NEGLIGENCE

■ The defendant next moves to dismiss Count Five on the grounds that as a negligence claim, it is barred by the statute of limitations. The plaintiff responds that the three-year statute of limitations governing tort actions has not run because the facts pled support an inference of a "continuing breach." *Shuster v. Buckley*, 5 Conn.App. 473, 500 A.2d 240 (1985).

The issue presented is whether the plaintiff's allegations that the defendant unlawfully disposed of hazardous substances, concealed such disposal, and failed to remediate, are acts of "continuous" negligent conduct sufficient to toll the running of the statute of limitations.

The plaintiff does not cite any Connecticut authority for the proposition that a cause of action in negligence, emanating from the alleged pollution of property, can ever toll a statute of limitations. Although certain torts classified as "temporary nuisances" are capable of tolling a statute of limitations, *see Miller v. Cudahy Co.* 858 F.2d 1449 (10th Cir.1988); *Filisko v. Bridgeport Hydraulic*, 176 Conn. 33, 40, 404 A.2d 889 (1978), in this instance the plaintiff does not assert a cause of action in tort for temporary nuisance. This court declines to broaden the Connecticut common law exception for tolling the statute of limitations to causes of action brought in negligence, continuous or not. Therefore, the defendants motion to dismiss Count Five is granted for failure to state a claim upon which relief may be granted.

## 6. COUNT SIX: UNJUST ENRICHMENT

■ In Count VI, the plaintiff alleges that "Sioux Tools will be unjustly enriched" if Nielsen is required to pay the clean-up costs associated with the contamination.

Under Connecticut law, "[t]o recover under unjust enrichment, the plaintiff must demonstrate: (1) that the defendant has benefitted from the transaction or has received something of value; and (2) that the benefit was unjust, that is, was not paid for by the defendant, to the detriment of the plaintiff. *Monarch Accounting Supplies, Inc. v. Prezioso*, 170 Conn. 659, 665–66 [368 A.2d 6]...." *Garwood & Sons Construction Co., Inc. v. Centos Assoc. L.P.*, 8 Conn.App. 185, 187, 511 A.2d 377 (1986).

Courts that have addressed common law claims for unjust enrichment in the context of CERCLA actions have held that where the plaintiff has a legal duty to clean up waste on a contaminated site, recovery based upon unjust enrichment is foreclosed. *See Ciba–Geigy Corp. v. Sandoz Ltd.*, Civ. A. No. 92–4491(MLP), 1993 WL 668325, at * 7, * 8 (D.N.J. June 17, 1993); *Mayor v. Klockner & Klockner*, 811 F.Supp. 1039, 1058–89 (D.N.J. 1993); *Smith Land & Improvement Corp. v. Rapid–American Corp.*, No. 86–0116, 1987 WL 56461 (M.D.Pa. September 21, 1987), *vacated on other grounds, Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989).

In the present case, the DEP ordered Nielsen to take action to remediate the contamination. Thus, "just because the [DEP] chose the plaintiff to do the cleanup work, does not mean that the defendant was enriched." *Smith Land*, No. 86–0116, 1987 WL 56461, at * 5.

Accordingly, the Court finds that the plaintiff's claim for unjust enrichment fails to state a claim for relief and must, therefore, be dismissed.

---

12. [Caveat emptor] does not apply to defects ... existing at the beginning of the tenancy, if they (a) *were not discoverable on reasonable inspection by the tenant, and* (b) were defects with the knowledge of which the landlord was charge-able. *Masterson v. Atherton*, 149 Conn. 302, 179 A.2d 592, 595 (1962) (emphasis added). In the present case, the plaintiff does not allege facts to support the position that the harm was not discoverable by the plaintiff's reasonable inspection.

**444**

### 7. COUNT SEVEN: RELIEF UNDER CONN.GEN.STAT. § 22a–16 AND THE STATUTE OF LIMITATIONS

In Count Seven, the plaintiff seeks a declaratory judgment determining that the defendant must remediate the site under Conn. Gen.Stat. § 22a–16, and seeks reimbursement of the plaintiff's costs, expenses, and attorneys fees. The defendant argues that since the applicable two-year statute of limitations governing this statute has run, Conn. Gen.Stat. 52–577c, the plaintiff's action is time barred. The plaintiff responds that because the action is for restitution, it should be governed by the six-year statute of limitations for an action in contract, and is therefore not time barred.

This court has already addressed this issue in ruling on Count Two. For the same reasons expressed in its discussion of Count Two, *supra*, the court grants the defendant's motion to dismiss Count Seven.

### CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (document # 18) is granted in part and denied in part. The motion to dismiss Count One is denied, and the motion to dismiss Counts Two through Seven is granted.

SO ORDERED.