**SEALY CONNECTICUT, INC., Plaintiff,**

**v.**

**LITTON INDUSTRIES, INC., et al., Defendants.**

**No. 3:94CV711(JBA).**

United States District Court, D. Connecticut.

March 27, 1997.

---

Peter M. Martin, Hebb & Gitlin, A Professional Corp., Hartford, CT, Franca L. Derosa, Brown, Rudnick, Freed & Gesmer, Hartford, CT, for Plaintiff.

Thomas J. Bryne, Thomas A. Rouse, Pullman & Comley, Bridgeport, CT, for defendants Litton Industries, Inc., Litton Systems, Inc.

James G. Green, Jr., Pepe & Hazard, Hartford, CT, Daniel Thomasch, Stephen G. Foresta, Donovan, Leisure, Newton & Irvine, New York, NY, for Defendant Ekco Housewares, Inc.

Sharon A. Cregeen, David J. McDonald, Westport, CT, James Edward O'Donnell, O'Donnell, McDonald & Cregeen, Westport, CT, for Defendant U.S. Baird Corp.

*RULING ON MOTIONS TO DISMISS*
*(Docs. 33, 68, & 75)*

ARTERTON, District Judge.

The present action arises from the contamination of certain real property located in Oakville, Connecticut (the "site"). Plaintiff Sealy Connecticut, Inc. ("Sealy") is the present owner of the property. Defendants are various entities who formerly operated industrial facilities on the site or who are alleged to stand as corporate successors to such entities. Plaintiff seeks to hold defendants liable under a variety of federal and state environmental statutes, as well as the common law of the state of Connecticut. Defendants Litton Industries, Inc. and Litton Systems, Inc. d/b/a Winchester Electronics ("Litton"); U.S. Baird Corporation f/k/a The Baird Machine Company ("Baird"); and Ekco Housewares, Inc. ("Ekco") and American Home Products, Inc. ("AHP") have offered separate motions to dismiss various of the counts applicable to them.[1] For the reasons set forth below, the motions are GRANTED in part and DENIED in part.

### The Parties

According to Sealy's Second Amended Complaint, Baird owned the site between 1894 and 1912, during which time Baird used the site for manufacturing machinery and other products. Thereafter, ownership passed to the Autotyre Company ("Autotyre"), which conducted manufacturing operations at the site until 1958. Sealy alleges that defendants Ekco and AHP are corporate successors of Autotyre, and, as such, are liable for contamination caused by Autotyre's activities.

After Autotyre relinquished ownership of the site, an affiliate of defendant Litton used the property for electroplating operations between 1959 and 1991. Initially, Litton leased the site from entities who are not parties to the present action. In 1986, Sealy became owner of the site and Litton's lessor for the

final years of the lease. During that time, Sealy contends that Litton intentionally concealed the scope of the site's contamination. Since Litton's departure, Sealy has continued to hold title to the site, although it appears that no additional manufacturing operations have been conducted on the property. The complaint does not specify the scope of the site's contamination, the extent of Sealy's past investigation and remediation activities, and whether such activities are ongoing.

### Discussion

*Count I: CERCLA Liability as to All Defendants*

■ Baird and Litton do not seek dismissal · of Sealy's CERCLA claims; however, Ekco and AHP contend that they may not be held liable under CERCLA because Sealy has not adequately alleged that they are successors to the corporate liabilities of Autotyre. Sealy rests on bare allegations that Ekco and AHP are "successors-in-interest" to Autotyre. (Compl.. ¶¶ 8, 9.) Although Sealy's pleadings are sparse in this regard, the Federal Rules of Civil Procedure generally require only "a short and plain statement of the [plaintiff's] claim." Fed.R.Civ.P. 8(a). Ekco and AHP do not contend that the heightened pleading requirements pertaining to fraud and mistake apply to Sealy's claims. *See* Fed.R.Civ.P. 9(b). Nor have Ekco and AHP identified any cases in which successor-liability claims were dismissed on the basis that the allegations were not factually specific. Indeed, Ekco and AHP rely principally on a case in which a motion to dismiss was *denied*, although the complaint only set forth the "bare conclusion" that "the corporation 'succeeded to and assumed' the assets and liabilities of the [other] corporation." *Soo Line R. Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472, 1482 (D.Minn.1992). In sum, because Ekco and AHP have failed to show that Sealy's successor-liability claims are not in compliance with the applicable pleading

---

1. Sealy has filed no opposition to Baird's motion to dismiss and opposition as to only one issue (successor liability) raised in the Ekco/AHP motion. Sealy apparently wishes to incorporate its arguments against Litton's motion as its opposition to the other two motions insofar as the

motions are overlapping. (Pl.'s Mem. in Opp. to Ekco/AHP Motion, at 6 n. 5.) Sealy contends that the Ecko/AHP motion offers only one issue that was not raised in Litton's motion. (*Id.*) As noted below, however, the Court disagrees with this assessment.

requirements, their motion to dismiss Count I is denied.

*Count II: RCRA Liability as to All Defendants*

■ Count II sets forth a claim for liability under two "citizen suit" provisions of RCRA, 42 U.S.C. § 6972(a)(1)(A) & (B). Defendants contend that the first provision is inapplicable because their conduct is "wholly past." They further contend that the second provision is inapplicable because it does not authorize a claim for money damages, but only injunctive relief. Sealy responds that, while defendants' conduct is past, the contamination resulting from their conduct is ongoing, and that the § 6972(a)(1)(B) claim, contrary to defendants' characterizations, actually does seek injunctive relief.

There is no dispute that Subsection (A), in contrast to Subsection (B), only provides a cause of action for "present violations" of regulatory requirements imposed pursuant to RCRA. Sealy relies on a number of district-court opinions holding that continuing decomposition and contamination by hazardous substances may satisfy the "present violation" requirement. *See, e.g., Gache v. Town of Harrison,* 813 F.Supp. 1037, 1041 (S.D.N.Y.1993). However, *Gache,* which is the only case Sealy cites from this circuit, was decided prior to the Second Circuit's decision in *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.,* 989 F.2d 1305 (2d Cir.1993). In *Connecticut Coastal,* the court considered whether the present violation requirement was satisfied by allegations that the defendant shooting range had caused millions to pounds of lead shot and clay target fragments to be deposited into Long Island Sound. Plaintiff sought a court order under the Clean Water Act ("CWA") and RCRA requiring defendant to clean up the debris, and offered evidence of an accumulation of lead in the tissue of mussels and ducks living near the shooting range. However, the Second Circuit held that plaintiff failed to meet the present violation require-

ment, which was an element of both the CWA and RCRA provisions under which plaintiff sought relief, because the shooting range had ceased operation. The Second Circuit expressly rejected the adequacy of plaintiff's allegation that "lead shot previously deposited in the sound" was "discharging pollutants as it dissolve[d]"[2]: "The present violation requirement of the Act would be completely undermined if a violation included mere decomposition of pollutants." 989 F.2d at 1313.

Sealy attempts to distinguish *Connecticut Coastal* by arguing that the "lead shot and clay at issue were not likely to dissolve and migrate, causing a continuous, ongoing violation." (Pl.'s Mem. in Opp. to Litton Motion, at 18 n. 3.) However, the Second Circuit's decision nowhere suggested that lead and clay fragments are unlikely to migrate; indeed, the court made note of an undisputed study concluding that lead was finding its way into the tissue of wildlife in the area of the shooting range. 989 F.2d at 1317. More generally, nothing in the language of *Connecticut Coastal* indicates that likelihood of migration is pertinent to meeting the "present violation" requirement. Accordingly, the Court declines to read *Connecticut Coastal* in the narrow manner urged by Sealy. Therefore, defendants' motions to dismiss the § 6972(a)(1)(A) claims are granted. *Cf. Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1159 (9th Cir.1989) (holding that § 6972(a)(1)(A) does not provide a cause of action for dumping that occurred prior to passage of RCRA); *Orange Environment, Inc. v. County of Orange,* 923 F.Supp. 529, 540 (S.D.N.Y.1996) (holding that *Connecticut Coastal* precludes finding of present violation under CWA where defendant had in the past illegally filled in a wetland; refusal of defendant to remediate not a "continuing violation").

■ Sealy's claims under Subsection (B) stand on firmer ground. Under this citizen suit provision, Sealy may seek injunctive re-

---

2. Although the Second Circuit discussed this allegation in the context of the plaintiff's CWA claims, the court made clear that the analysis of "present violation" under CWA and RCRA was identical. 989 F.2d at 1315 ("Because we find

no valid allegation of present violation with respect to [plaintiff's] Clean Water Act suit, we must reach the same result with respect to its first claim under [ § 9672(a)(1)(A)].").

lief ordering the defendants "to take such [] action as may be necessary" to address "an imminent and substantial endangerment to health or the environment." Defendants contend that Subsection (B) should not be used as a device to obtain clean-up costs from potentially responsible parties ("PRPs"), which is the proper domain of CERCLA. Sealy responds that it seeks not money damages, but injunctive relief, specifically, a mandatory injunction "that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste." The Supreme Court recently held that such mandatory injunctions are authorized by § 6972(a)(1)(B). *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 1254, 134 L.Ed.2d 121 (1996). While acknowledging the significance of this decision, defendants urge the Court to carve out an exception to the *Meghrig* rule for plaintiffs, like Sealy, who are also PRPs.[3] Defendants express concern that PRPs may try to use injunctive relief under the RCRA citizen-suit provision as a way to avoid clean-up costs properly allocable to them under CERCLA.

The Court shares defendants' concerns. It would surely be an anomalous result if the goals of CERCLA, which was designed to correct for the deficiencies of the RCRA regulatory scheme, could be defeated by a provision of RCRA. However, it appears that no other courts have addressed this issue squarely. Moreover, it is too early in the present litigation to determine what precise shape a mandatory injunction under Subsection (B) would take; the nature, extent, and allocation of CERCLA response costs; and the extent (if any) to which a RCRA injunction would undermine the goals of CERCLA with respect to cleanup of the Oakville site. Nothing in the language of Subsection (B)

suggests that the injunctive relief it provides must be implemented inflexibly and without regard to other statutory schemes. Accordingly, the Court declines, at this time, to hold as a matter of law that a PRP may not seek relief via a RCRA citizen suit. Because defendants have not demonstrated the CERCLA and RCRA provisions at issue to be incompatible for purposes of the present suit, defendants' motions to dismiss the § 6972(a)(1)(B) claims are denied.

*Statute of Limitations*

Defendants argue that several of Sealy's counts are barred by the tort statutes of limitations in Connecticut, including Sealy's claims for absolute nuisance (Count III), negligent nuisance (Count IV), statutory nuisance (Count V), violation of C.G.S. § 22a–452 (Count VI), waste (Count VIII), trespass (Count IX), negligence (Count X), negligence per se (Count XI), failure to warn (Count XII), and violation of CUTPA (Count VIV). Defendants contend that all of these claims are governed by, at most, a three-year statute of limitations, and that the statutory time period began to run when Sealy discovered the contamination of the site in 1990. However, Sealy responds that it did not discover "the contamination of which it complains" until Litton vacated the site in July of 1991. (Pl.'s Mem. in Opp. to Litton Motion, at 30.) Clearly, the date of discovery is a matter in dispute, and one which the Court may not appropriately resolve in a motion to dismiss.[4] Accordingly, defendants' motions to dismiss on the basis of statute of limitations are denied.

*Counts III, IV, & V: Nuisance Claims as to All Defendants*

■ Defendants contend that Sealy, as the owner rather than the neighbor of a contami-

**3.** CERCLA establishes that PRPs include not only those who handle or generate hazardous wastes, but also those who own or owned facilities at which hazardous substances were disposed and at which there is presently a release or threatened release of such substances. 42 U.S.C. § 9607(a). It is not clear whether Sealy concedes that it is a PRP; however, the Court need not resolve that issue for purposes of the present motion.

**4.** Because the Court finds the date of discovery to be a matter in dispute, the Court need not address Sealy's claims that the statute of limitations should be tolled because of Litton's acts of concealment, that Litton should be equitably estopped from asserting a statute of limitations defense, and that the contamination amounts to a continuing violation to which the statute of limitations is not applicable. Nor need the Court address Sealy's argument that a tort statute of limitations is not applicable to violations of C.G.S. § 22a–452.

nated property, lacks standing to assert its nuisance claims (Counts III, IV, and V). However, nuisance need not "occur between legal strangers" in order to be actionable. *See Arawana Mills Co. v. United Technologies Corp.*, 795 F.Supp. 1238, 1250 (D.Conn. 1992) (Cabranes, J.). The cases on which defendants principally rely turn less on the law of nuisance, than on the doctrine of caveat emptor. *See Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 314 (3d Cir. 1985) ("Where, as here, the rule of caveat emptor applies ... "); *Nielsen v. Sioux Tools, Inc.*, 870 F.Supp. 435, 442–43 (D.Conn. 1994) (Covello, J.) ("[C]ourts have relied on the doctrine of caveat emptor in holding that owners of property lack standing to bring nuisance suits against a predecessor in possession."). According to this doctrine, a vendor of land is "not liable to his vendee ... for the condition of the land existing at the time of the transfer." *Philadelphia Elec. Co.*, 762 F.2d at 312 (quoting *Restatement (Second) of Torts*, § 352 (1965)).

Sealy relies primarily on Judge Cabranes's decision in *Arawana Mills*, which held that a lessor may have standing to bring a nuisance claim against a lessee. 795 F.Supp. at 1250. Sealy asks this Court to follow *Arawana Mills* and reject Judge Covello's ruling in *Nielsen*.[5] However, *Arawana Mills* and *Nielsen* are easily reconciled: while the former concerns lessee liability, the latter deals with vendor liability. The defendant in *Arawana Mills*, like Litton, apparently offered no authority suggesting that the doctrine of caveat emptor shields lessees from liability for the condition in which they leave leased property. *See* 795 F.Supp. at 1250. In contrast, *Nielsen* presented the typical scenario in which caveat emptor applies: a vendee of land suing the vendor. Because the plaintiff in *Nielsen* offered no allegations suggesting

that any exception to the doctrine of caveat emptor was applicable, Judge Covello granted the defendant's motion to dismiss. 870 F.Supp. at 443.

■ Applying the lessons of *Arawana Mills* and *Nielsen* to the present case, the Court concludes that Litton's motion to dismiss should be denied, because Litton has failed to show why doctrines concerning vendor liability should shield a lessee from nuisance suits. However, the vendor liability cases seem much more applicable to the situations of Baird, Ekco, and AHP. Sealy, like the plaintiff in *Nielsen*, has offered no allegations or authority suggesting that its claims against these defendants are not precluded by the doctrine of caveat emptor. Accordingly, the Baird and Ekco/AHP motions to dismiss are granted as to Sealy's nuisance claims in Counts III, IV, and V.[6]

## Count V: Liability Under C.G.S. § 52–481 as to All Defendants

■ Defendants argue that Count V should be dismissed because C.G.S. § 52–481, which provides for the abatement of a manufacturing nuisance, applies only to ongoing manufacturing operations, and not to entities whose former operations have resulted in contamination. The statute specifically provides as follows:

(a) If any manufacturer carries on his business, or exposes the material used therein, or refuse produced thereby, so as to constitute a nuisance to the public or to individuals, any persons aggrieved thereby may unite in a complaint ... for the discontinuance or abatement of the nuisance

. . . .

(c) If, after hearing, the court is of the opinion that the plaintiffs are entitled to

---

5. Sealy also relies on the Connecticut Supreme Court's decision in *Starr v. Commissioner of Environmental Protection*, 226 Conn. 358, 627 A.2d 1296 (1993). However, while *Starr* establishes that an owner of land may be found liable under C.G.S. § 22a–432 for contamination caused by a previous owner. *Starr* did not address whether an owner has standing to bring a nuisance suit against a previous owner, and the doctrine of caveat emptor was not in any way implicated in the case. Therefore, the Court finds Sealy's reliance on *Starr* to be misplaced.

6. Because these counts are dismissed as to Baird, Ekco, and AHP on the basis of their standing arguments, the Court need not address their additional arguments, which appear to be unopposed by Sealy, that Sealy has failed to allege that their use of the site was unlawful or unreasonable, which they assert to be a necessary element of a nuisance claim.

relief, it may make such order for the discontinuance or abatement of the nuisance, or for regulating the manner of conducting the business, as it finds to be necessary.

Defendants focus on the statute's use of such terms as "discontinuance," "carries on his business," and "manner of conducting the business" as indications that the legislature only intended the statute to apply to ongoing operations. Sealy argues that the provision in the statute for "abatement" of a nuisance suggests otherwise. However, the concept of "abatement of a nuisance" seems no less directed to ongoing production than does "discontinuance." *See Black's Law Dictionary* 1066 (6th ed.1990) (defining "abatement of a nuisance" as "[t]he removal, stoppage, prostration, or destruction of that which causes a nuisance"). In short, the Court can discern no intent in the language of the statute to encompass contamination caused by manufacturing operations that have long since ceased.

Because Sealy's expansive reading of § 52–481 finds no support in the plain language of the statute, and because Sealy has not cited a single case adopting its interpretation, the Court concludes that the statute only applies to ongoing manufacturing operations. Accordingly, defendants' motions to dismiss Count V are granted.

*Count IX: Liability for Trespass as to All Defendants*

■ Baird, Ekco, and AHP, but not Litton, argue that Count IX should be dismissed as to them because the cause of action for trespass does not encompass substances left in the ground by the former owner of a property. The defendants rely on *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, in which the court held as follows:

> Count III of the complaint asserts that Mobil's releases of oil and hazardous materials at the site constitute a trespass. A trespass, however, requires an unprivileged, intentional intrusion on land in the *possession of another.* In this case, Mobil owned and was in possession of the property when it allegedly released the oil causing the contamination. Thus, Mobil's releases of oil were not unprivileged, and

Mobil clearly was not intruding on land in the possession of another. Mobil's releases of oil on its own land, therefore, cannot constitute a trespass.

747 F.Supp. 93, 99 (D.Mass.1990) (citations omitted, emphasis in the original); *see also Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.*, 778 F.Supp. 101, 105 (D.R.I.1991) (following *Wellesley Hills* ). Sealy offers no opposition to Baird, Ekco, and AHP on this point. Accordingly, Count IX is dismissed as to Baird, Ekco, and AHP.

*Count XIII: Liability for Conducting Abnormally Dangerous Activity as to All Defendants*

■ Sealy contends that defendants' manufacturing processes and related practices in handling, storing, and disposing of hazardous wastes constitute an "abnormally dangerous" or "ultrahazardous" activity, triggering strict liability for damages arising therefrom. Defendants contend that Sealy's allegations do not state a claim for strict liability under Connecticut law. Connecticut's Supreme Court has not addressed the question of if, or under what circumstances, the handling of hazardous wastes may give rise to strict liability. A variety of federal and state trial courts have reached different results as to this issue, although the greater weight of authority appears to be against extending strict liability to the hazardous waste context. *See, e.g., Arawana Mills*, 795 F.Supp. at 1252 (no strict liability for machine shop that handled, stored, and leaked contaminates into soil); *Nielsen*, 870 F.Supp. at 442 (no strict liability for machine shop and distribution center that deposited hazardous substances into a leaking underground storage tank); *The Stop and Shop Companies, Inc. v. Amerata Hess Corp.*, H–84–454(MJB), 11 Conn. L.Trib. No. 11, at 1 (D.Conn. Oct. 16, 1984) (Blumenfeld, J.) (no strict liability for gasoline stored in underground storage tanks that contaminated soil and groundwater). This Court has previously held that the case law may be reconciled to some extent by reference to the nature of the business of the polluter: while a landfill that is in the business of accepting and disposing of hazardous wastes may be conducting an ultrahazardous

activity, a manufacturer whose handling of hazardous waste is only incidental to its business should not necessarily face the same standards of strict liability. *Albahary v. Town of Bristol*, 963 F.Supp. 150, 154–56 (D.Conn.1997); *see also Connecticut Water Company v. Town of Thomaston*, 1996 WL 168051(Conn.Super.1996) (Corradino, J.).

Making use of the distinction described above, the Court concludes that defendants in the present case, whose handling of hazardous wastes is only alleged to be incidental to their manufacturing activities, are not subject to strict liability for engaging in an unreasonably dangerous activity. Accordingly, Count XIII is dismissed as to all defendants.

*Count XIV: Liability Under CUTPA as to All Defendants*

■ Defendants move to dismiss Count XIV on the basis that their alleged environmental contamination was not committed "in the conduct of any trade or commerce," as is required for liability under CUTPA. C.G.S. § 42–110b(a). Although the issue has not been addressed by the Connecticut Supreme Court, this Court's view, and the clear weight of other authority, accepts defendants' position that CUTPA does not encompass the handling of hazardous waste incident to a defendant's manufacturing operations. *See, e.g., Bernbach v. Timex Corp.*, 989 F.Supp. 403, 409–10 (D.Conn. 1996); *Abely Waste Oil Services, Inc. v. Ravenswood Development Corp.*, 1995 WL 562203, *4 (Conn.Super.) (Hart, J.); *Barnes v. General Electric Co.*, 1995 WL 447904, *10–11 (Conn.Super.) (Hennessey, J.); *cf. Arawana Mills*, 795 F.Supp. at 1253. The single case cited by Sealy, *Keeney v. Cappoziello*, is plainly distinguishable: the defendants in that case were involved in the "waste disposal industry." *See* 1993 WL 301152, *1, *4 (Conn.Super.) (Berger, J.). Presumably because the alleged contamination caused by the *Cappoziello* defendants so clearly arose from their conduct of "trade or commerce," the *Cappoziello* court never addressed the issue raised by the defendants in the present case. Sealy has not alleged that these defendants are or were engaged in the business of waste disposal; therefore, the Court finds Sealy's reliance on *Cappoziello* to be misplaced. Accordingly, defendants' motions to dismiss Count XIV are granted insofar as Count XIV rests on allegations of the mishandling of hazardous substances.

Of course, Sealy's claims against Litton encompass not just environmental contamination, but also Litton's alleged concealment of the contamination from its lessor. However, this claim fails by similar logic. Sealy has not alleged that Litton's activities as lessee of the site were anything but incidental to Litton's manufacturing business. When a lessor seeks to impose CUTPA liability on a lessee, the key "question is whether leasing property is defendant's 'trade or commerce.' " *Arawana Mills*, 795 F.Supp. at 1252–53 (citing *Colonial Motors, Inc. v. The New York Design Group, Inc.*, Civil No. H–86–206(AHN) (D. Conn. June 20, 1986)). Judge Cabranes granted a motion to dismiss a lessor's CUTPA claims under similar circumstances in *Arawana Mills*. Sealy has cited no authority to the contrary. Accordingly, Litton's motion to dismiss all CUTPA claims against itself is granted.

### Conclusion

For the foregoing reasons, defendants' motions to dismiss (Docs. 33, 68, & 75) are GRANTED in part and DENIED in part. Specifically, Litton's motion to dismiss (Doc. 33) is GRANTED as to Counts V, XIII, and XIV, GRANTED in part as to Count II, and DENIED as to the remaining counts. The motions to dismiss of Baird, Ekco and AHP (Docs. 68 & 75) are GRANTED as Counts III, IV, V, IX, XIII, and XIV; GRANTED in part as to Count II, and DENIED as to the remaining counts.

IT IS SO ORDERED.