**UNITED STATES of America, Plaintiff,**

**Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet, Plaintiff–Intervenor,**

v.

**Donald E. DISTLER, et al., defendants.**

**PORTER PAINT CO., et al., Third–Party Plaintiffs,**

v.

**ARISTOKRAFT CORPORATION, et al., Third–Party Defendants.**

Nos. 88–0200–L(J), 88–0201–L(J).

United States District Court,
W.D. Kentucky,
at Louisville.

Aug. 11, 1992.

Jon A. Mueller, Dept. of Justice, Land & Natural Resources Div., Environmental Enforcement Section, Environment and Natural Resources Div., Washington, D.C., Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., for U.S.

Kathryn M. Hargraves, David M. Jones, Dept. of Law, Natural Resources and Environmental Protection Cabinet, Frankfort, Ky., for Com. of Ky.

Edward C. Airhart, Airhart & Associates, Louisville, Ky., for Donald E. Distler, Kentucky Liquid Recycling, Inc., and Estate of Clara Distler, Estate of William E. Distler.

Jon M. Sebaly, James A. Dyer, Jesse B. Beasley, Sebaly, Shillite & Dyer, Dayton, Ohio for Angell Mfg. Co.

Jeffrey C. Fort, Jacqueline M. Vidmar, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for Angell Mfg. Co., Angex Corp. and W.E. Davis.

Carl W. Breeding, Reece, Lang, Aker & Breeding, P.S.C., Lexington, Ky., and Elliott P. Laws, John C. Martin, Timothy A. Vanderver, Jr., Patton, Boggs & Blow, Washington, D.C., for Essex Group, Inc. and BASF Corp.

Charles M. Chadd, Terry Satinover, Pope, Ballard, Shepherd & Fowle, Ltd., Chicago, Ill., for A.O. Smith Corp.

Mark R. Feather, Brown, Todd & Heyburn, Louisville, Ky., for Wickes Companies, Inc. and Illinois Tool Works, Inc.

E.H. Bartenstien, Wayne J. Carroll, MacKenzie & Peden, P.S.C., Louisville, Ky., for Kurfees Coatings, Inc.

David J. Bailey, Mary A. Prebula, Jones, Day, Reavis & Pogue, Atlanta, Ga., for McKesson Corp.

Marcus P. McGraw, John C. Bender, Greenebaum, Doll & McDonald, Lexington, Ky., for Porter Paint Co. and Ashland Oil, Inc.

Stephen W. Leermakers, Senior Litigation Counsel, Ashland Chemical Co., Columbus, Ohio for Ashland Chemical Co.

W. Patrick Stallard (Liaison Counsel for Generator Defendants), Wanda K. Ballard, Stites & Harbison, Louisville, Ky., Laura D. Keller, Stites & Harbison, Lexington, Ky., for Hy–Klas Paints, James River Corp. Nevada, Owens–Illinois, Inc.

William S. Wetterer, Jr., William S. Wetterer III, Mulloy, Walz, Wetterer, Fore & Schwartz, Louisville, Ky., for Thomas Hoeppner.

Thomas T. Terp, Kim K. Burke, Laura A. Ringenbach, Taft, Stettinius & Hollister, Cincinnati, Ohio, Robert Craig, Taft, Stettinius & Hollister, Covington, Ky., for Mobil Oil Corp. and Union Carbide Corp.

Samuel D. Hinkle IV, Greenbaum, Boone, Treitz, Maggiolo & Brown, Louisville, Ky., for Cincinnati Varnish.

Robert M. Olian, Anne D. Samuels, Sidley & Austin, Chicago, Ill., for Velsicol Chemical Corp.

John S. Reed, Cecelia T. Allen, Hirn Reed & Harper, Louisville, Ky., for Special Counsel for Generator Defendants.

Charles K. O'Neill, William R. Luraschi, James C. La Forge, Cheryl A. Hughes, Chadbourne & Parke, New York City, for Aristokraft, Inc.

Philip J. Schworer, Dinsmore & Shohl, 1900 Chemed Center, Cincinnati, Ohio, for Borden, Inc.

John D. Englar, Gen. Counsel, Burlington Industries, Inc., Barbara A. Hatcher, Asst. Gen. Counsel, Greensboro, N.C., for Burlington Industries, Inc.

Charles Weiner, Mark Greenberger, Katz, Greenberger, Zied, Katz & Norton, Cincinnati, Ohio, William H. Earnest, Harvey A. Rosenzweig, Elarbee, Thompson & Trapnell, Atlanta, Ga., for Chemcraft, Inc.

Susan Shumway, Donna A. Dobbs, Pamela I.S. Missal, Shumway & Merle, Southport, Conn., for Chesebrough–Ponds, Inc.

Christopher R. Schraff, Michael R. Schmidt, Porter, Wright, Morris & Arthur, Columbus, Ohio, for CIBA–GEIGY Corp.

Ray Webb, Robinson & McElwee, Lexington, Ky., for Courier Journal Job Printing Co.

R. Paul Detwiler, Covington and Burling, Washington, D.C., for DAP, Inc.

A. Christian Worrell, III, Graydon, Head & Ritchey, Cincinnati, Ohio, for Dee Sign Co.

Guy V. Johnson, Senior Counsel, E.I. du Pont de Nemours & Co., Susan Wilson, Ellen Green, Wilmington, Del., Lynanne Wescott, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for E.I. du Pont de Nemours & Co.

Robert F. Lawrence, Daniel Squire, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., for Owens–Corning Fiberglas Corp. and Diamond Intern. Corp.

Renata M. Scruggs Manzo, Law Depart., Reynolds Metals Co., Richmond, Va., for Reynolds Aluminum Recycling Co. and Reynolds Metals Co.

Philip C. Schneider, Schneider Lett & Shaneyfelt, Huntingburg, Ind., for DMI Furniture, Inc., Jasper Desk Co. and Styline Industries, Inc.

Peter N. Tassie, William D. Grubbs, Woodward, Hobson & Fulton, Louisville, Ky., for GAF Corp. and Prescotech, Inc. (# 329).

Charles G. Middleton, III, Kathiejane Oehler, Middleton & Reutlinger, Louisville, Ky., Louis T. Bolognini, Asst. Gen. Counsel Litigation, Great Lakes Chemical Corp., West Lafayette, Ind., for Great Lakes Chemical Corp.

Donald L. Cox, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, Ky., for Hoechst Celanese Corp.

David Van Epps, Gregory A. Ruehlmann, Michael E. Samuels, Vorys, Sater, Seymour & Pease, Cincinnati, Ohio, for Hooker Chemical Corp.

William C. Barnard, Frank J. Deveau, Gayle A. Reindl, Sommer & Barnard, P.C., Indianapolis, Ind., for Jasper Seating Co., Jasper Chair Co., C.W. Zumbiel Box Co., Kimball Electronics, Inc., Kimball International, Inc. and Monsanto Co.

William F. Woodward, Woodward, Hobson & Fulton, Michael V. Hargadan, Sr., Louisville, Ky., for Kitchen Kompact, Inc.

Jane E. Grigsby, Thompson, Hine & Flory, Cincinnati, Ohio, Ben L. Pfefferle III, Thompson, Hine & Flory, Columbus, Ohio, for Kurz–Kasch, Inc. and The Mead Corp.

Robert D. Mowrey, Alston & Bird, Atlanta, Ga., for Printpack, Inc.

Laurence H. Levine, Cary R. Perlman, Latham & Watkins, Chicago, Ill., for Magnatek, Inc.

Robert E. Lannan II, Robinson & McElwee, Charleston, W.Va., R. Allan Webb, Robinson & McElwee, Lexington, Ky., for Olin Corp.

Thomas L. Orris, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, Mo., for P.D. George Co.

Dorothy M. Pitt, John F. Rogers, Jr., Gregory E. Bekes, Rogers, Fuller & Pitt, Louisville, Ky., for Smith Cabinet Manufacturing Co.

Nancy S. Martin, Assoc., Gen. Counsel, Federal–Mogul Corp., Southfield, Mich., for Switches, Inc.

Timothy J. Lozen, Mark Morton, Freeman McKenzie, A Professional Ass'n, Mount Clemens, Mich., for Weyerhaeuser Co.

JOHNSTONE, District Judge.

## MEMORANDUM

This is a consolidated action for the recovery of environmental cleanup and response costs under 42 U.S.C. § 9601 *et seq.* (CERCLA) The case arises from the cleanup of two unpermitted hazardous waste drum disposal sites in Kentucky operated by Donald Distler and his company, Kentucky Liquid Recycling, Inc. Presently before the court are motions for summary judgment by numerous third party defendants. For the reasons set forth below, the motions will be denied.

FACTS:

In August of 1976, Donald Distler formed Kentucky Liquid Recycling, Inc. (KLR). KLR was to be in the business of recycling and disposing of industrial waste materials. Distler intended to collect industrial waste from various sources, filter and sell that portion of the waste that could be used as low grade fuel, and incinerate the non-useable remainder.

Unfortunately, Distler had no facilities for the incineration or disposal of waste. However, KLR proceeded to enter into agreements to receive and haul large volumes of waste from several generators and waste brokers. This created an immediate and continuing disposal problem.

In September of 1976, KLR leased 5000 square feet of warehouse space on Rowan Street in Louisville, Kentucky (Rowan Street) and began to store drums of waste at this location. This drew the attention of the Louisville Fire Department, who felt uneasy about hundreds of drums of toxic, flammable waste stacked nine high in a residential district. By the end of December, 1976, the city informed Distler that the drums at Rowan Street would have to go. Removal of these drums occurred slowly over the following months.

Meanwhile, KLR purchased an old Standard Oil tank farm facility in New Albany, Indiana. The facility had a large basin into which any liquid could be dumped and then filtered and pumped into overhead storage tanks. KLR used this facility to store and process at least some of the waste it was collecting. In addition to the storage and processing of waste, Distler intended to construct an incinerator at this New Albany location. However, New Albany officials refused to grant a permit for the incinerator's construction.

Storage capacity at New Albany was limited and the waste kept rolling in. The problem was compounded by mounting pressure from the Louisville authorities to empty Rowan Street. In March of 1977, KLR leased an old brickyard near West Point, Kentucky (the Brickyard) and immediately began to ship and dispose of waste at this location. KLR apparently kept no records of these waste shipments to the Brickyard.

At the end of March, 1977, an anonymous complaint was made to Public Health Officials that spills from drums of waste were entering the Ohio River. Two locations were identified; the Brickyard and a farm owned by Distler's parents (the Farm). The Farm is a 13.68 acre tract of land on Dixie Highway in Louisville. Investigations began into these locations by state and federal authorities.

In mid-April 1977, U.S. EPA representatives, in conjunction with the Kentucky Department of Natural Resources and Environmental Protection, the FBI, and the Kentucky State Police, conducted sampling investigations of the Brickyard and Farm. At that time numerous drums of waste were observed at both locations and the presence of buried drums was detected at the Farm. Based upon information gathered during these investigations, restraining orders were issued by the Franklin Circuit Court prohibiting Distler from storing and/or disposing of industrial waste at the Brickyard or Farm sites. Evidence shows that these orders were violated by Distler.

In January of 1979, the EPA conducted a cleanup of the Farm and removed the drums located above the ground. In March 1984, the EPA went back to the Farm site and removed the drums and containers which had been buried. From February 28, 1982 to March 26, 1982 the EPA removed

drums from the Brickyard. Some of the drums were traceable to specific waste generators. Many were unmarked or unidentifiable.

The United States filed suit in March of 1988 against Distler and eighteen original generator defendants seeking recovery under CERCLA of response costs incurred by EPA in cleanup of the Farm site. A separate action was filed against Distler and fifteen generator defendants relating to the Brickyard site. The Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet subsequently intervened to recover its response costs.

Thirteen of the eighteen defendant corporations filed complaints against 40 separate corporate third party defendants. The complaint in the Farm site action named 35 corporate defendants. The Brickyard complaint named 39 corporate defendants. The U.S. has recently amended its complaint to add 4 of the third party defendants as primary defendants in the Brickyard action. Thirty-four third party defendants have filed motions for summary judgment which are currently pending before the court. Ruling on nineteen of those motions will be reserved at the request of the parties while settlement negotiations continue.

THE LAW:

CERCLA was enacted in 1980 as a comprehensive response to the problems of hazardous waste. Section 107(a) of CERCLA imposes liability for response costs incurred by the government or private parties for cleanup of damages to natural resources on, *inter alia*, "generators" of hazardous wastes. A generator of hazardous waste is defined as:

> any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.

42 U.S.C. § 9607(a)(3). Each of the third party defendants in these actions are "generators" under the statutory definition.

CERCLA § 107 requires only a minimal causal nexus between the defendant's hazardous waste and the harm caused by the release at a particular disposal site. Under this scheme, traditional tort notions such as proximate cause, do not apply. CERCLA only requires that the plaintiff prove by a preponderance of the evidence that the defendant deposited his hazardous waste at the site and that the hazardous substances contained in the defendant's waste are also found at the site. *Violet v. Picillo*, 648 F.Supp. 1283 (D.R.I.1986) (citing *United States v. Wade*, 577 F.Supp. 1326 (E.D.Pa.1983)).

It is unnecessary under this standard of causation to trace the release of a hazardous waste to a particular generator to establish liability. For example, in *United States v. Ottati & Goss, Inc.*, 630 F.Supp. 1361 (D.N.H.1985), the district court held certain generators liable for response costs based upon drums of waste deposited at the site, some of which had leaked their contents into the soil. The court held the generators liable without additional proof as to whose drums had leaked. Under such circumstances, a defendant who claims that its drums were not among those contributing to the release bears the burden of identifying the responsible parties.

The same standard applies when waste from several generators becomes commingled or otherwise unidentifiable and is removed from one site to another. Thus, in *United States v. Bliss*, 667 F.Supp. 1298 (E.D.Mo.1987), the district court held that, where waste from the generator defendants was routinely mixed in a holding tank and later some of the contents was withdrawn from the tank and released at another location, the defendants bore the burden of showing that their waste was not a part of the mixture. The court in *Bliss* stated that "the same result should obtain whether the wastes have become unidentifiable due to mixing, migration, or mismanagement." 667 F.Supp. at 1310. Thus, if

random unidentifiable waste is removed from Site A to Site B, each generator with waste at Site A is potentially liable for response costs at Site B. In such a situation, each generator bears the burden of producing evidence to exculpate itself. In this way, responsibility for adequate disposal is placed squarely with the generators and they bear the risk that the waste will become unidentifiable. This notion of liability is broad, but comports entirely with the statutory purpose.

■ However, the requirement of causation is not entirely dispensed with under CERCLA. Courts have recognized that it is not sufficient to merely show that waste was placed into the hands of a suspect hauler. *See; United States v. Wade*, 14 E.L.R. 20436 (E.D.Pa.1984) (Wade II); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162 (D.C.Mo.1985). Evidence must be submitted to allow the fact finder to conclude that the defendants' waste, in some form, reached a particular site. That proof may include documents, direct testimony or circumstantial evidence. Where unidentifiable waste is then moved from one site to another, there is a rebuttable presumption that a generator's waste was included in the shipment.

## APPLICATION OF THE LAW TO THESE DEFENDANTS:

Under the standards outlined above, the third party plaintiffs are required to show, by a preponderance of the evidence, that a particular third party defendant's waste was either shipped directly to the Brickyard or the Farm, or became unidentifiable at a location from which waste was later removed to the Brickyard or the Farm. Of course, third party plaintiffs must also prove that the release site contains hazardous substances of the same type disposed of by the generator. Each of the third party defendants' motions for summary judgment is based on the same basic prem-

ise; i.e., there is insufficient evidence to link their waste to either the Farm or the Brickyard. Although each third party defendant is to some extent unique, they can be roughly grouped into the following categories.

The Drum Defendants:

■ It is alleged that waste containers discovered at the sites bore labels or markings identifying these defendants[1]. The drum defendants generally argue for summary judgment on two grounds: There is insufficient proof that waste from these defendants was ever given to KLR and/or the evidence is insufficient to prove that the containers found at the sites actually contained waste from these defendants. Some drum defendants contend that their containers were refilled by KLR or by other generators.

Sufficient questions of fact exist to preclude summary judgment as to these defendants. Each of the drum defendants can be linked to Distler directly through shipping documents or through Chem–Dyne Corporation, a waste broker who supplied large volumes of waste to KLR. In turn, each of the drum defendants can be linked to the sites through Chem–Dyne customer codes stenciled on the containers or by markings directly identifying the drum defendant. A connection with KLR and the presence of drums at the sites is sufficient to overcome the motion for summary judgment. Whether any of the drums were emptied and refilled with the waste of another party prior to disposal is a question of fact.

The New Albany Defendants:

The New Albany defendants[2] have waste that can arguably be traced to KLR's New Albany facility through various documents and reports. New Albany is claimed to have been a mixing station where waste was routinely commingled and/or shipped to the Farm or Brickyard

---

1. The drum defendants addressed in this memorandum are Hoechst Celanese Corp., E.I. duPont de Nemours & Co., GAF Corporation, Monsanto Co., and P.D. George Co.

2. The New Albany defendants addressed in this memorandum are Burlington, Chesebrough–

Ponds, Kimball Electronics, Kimball International, Kitchen Kompact, Kurz–Kasch, Magnetek, Mead, Reynolds Aluminum Recycling, Switches, and Weyerhaueser.

for disposal. Some of the defendants challenge the evidence initially linking them to New Albany. Others admit the New Albany connection but claim there is no evidence showing their waste was shipped to the Farm or Brickyard.

One source of evidence connecting most of these defendants to New Albany are reports which were required by the State of Indiana for haulers of hazardous waste (IWH reports). Initially, KLR filed a number of these reports identifying the source of the waste and listing the destination as New Albany. Indiana officials began to suspect that waste was being shipped to other disposal sites and forced KLR to revise the IWH reports to reflect the "true" destinations. KLR filed revised reports showing the waste was shipped to other locations. Some of the New Albany Defendants rely on these "restated" reports to argue that their waste never reached New Albany or was shipped on to one of the restated locations.

These restated IWH reports only serve to create an issue of fact regarding the destination of the waste. KLR was evading the authorities at every point in its operation. Apparent discrepancies exist between the amounts of waste procured by KLR from the New Albany Defendants and the amounts received at the restated destinations. A reasonable trier of fact could conclude that the restated IWH reports are inaccurate and the waste reached New Albany where it became unidentifiable.

■ Those defendants whose waste can be traced to New Albany claim that, because there is no specific evidence of shipment of their particular waste to either of the sites, they are entitled to summary judgment under the law. This court disagrees. This is not a case where liability is sought to be imposed merely on the basis of defendants placing their waste in the hands of a suspect hauler. In this case, it is alleged that the waste can be traced to a specific point of commingling and mismanagement. This is similar to the problem presented in *Bliss, supra.*

In *Bliss* there was no dispute that the defendant's waste was commingled or that the waste mixture was removed to the release site. Here, questions of fact exist on these issues. The court adopts the *Bliss* rational for the imposition of liability and applies it to this situation: Where a particular generator's waste becomes unidentifiable due to commingling or mismanagement at one location, and unidentifiable waste is later removed to a release site containing the same type of waste, the causal nexus is satisfied. If the trier of fact is convinced that a particular defendant's waste became unidentifiable at New Albany, and that waste from New Albany was later released at either of the two sites, the burden is on the third party defendants to show their waste was not present in the release. There is sufficient evidence of commingling and transshipment at New Albany to overcome the motions for summary judgment.

DAP, Inc.

It is alleged that third party defendant DAP, Inc. had waste stored in the warehouse leased by KLR on Rowan Street in Louisville. Third party plaintiffs claim that this waste was eventually moved directly to the Brickyard or to New Albany where it was mixed with other waste and shipped to the Brickyard or the Farm. Like the New Albany Defendants, DAP argues that there is no evidence of actual shipment to one of the two sites.

Summary judgment is inappropriate for the same reasons pertaining to the New Albany Defendants. Rowan Street was a specific point of mismanagement. If the fact finder believes the evidence of DAP's waste being shipped to Rowan Street, and finds that unidentifiable waste was later removed from that location to either of the sites, directly or via New Albany, liability can attach. There is sufficient evidence to support a reasonable inference of such waste shipment. Generator liability under CERCLA cannot be avoided by remaining ignorant or being misinformed of the disposal process, nor will sloppy record keeping constitute a defense where waste is shuttled between locations. Under CERC-

LA the generator is responsible for safe disposal.

CONCLUSION:

Where hazardous waste has been traced to a point of commingling or mismanagement and random, unidentifiable waste is then removed and released at another location, CERCLA will impose liability upon generators contributing to the waste stream, upon a showing that the release site contains hazardous substances of the same type disposed of by the generator. Numerous questions of fact exist regarding the shipment and release of these third party defendants' waste. The summary judgment motions will be denied.