**CHEM–NUCLEAR SYSTEMS, INC., Plaintiff,**

v.

**ARIVEC CHEMICALS, INC., Lockheed Corp., the United States of America, and the U.S. Dept. of the Air force, Defendants.**

**Civil Action No. 1:95–CV–1809–JTC.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 10, 1997.

Frank A. Lightmas, Jr., Atlanta, GA, John F. Stoviak, Philadelphia, PA, for Plaintiff.

Leonard Harry Queen, Sr., Douglasville, GA, Richard Allen Horder, Atlanta, GA, Newton G. Quantz, III, Atlanta, GA, Thomas K. Bick, Washington, DC, James R. Schulz, Asst. U.S. Atty., Atlanta, GA, John C. Spinard, Atlanta, GA, Katherine A. Dreyfus, U.S.D.J., Washington, DC, for Defendants.

## *ORDER*

CAMP, District Judge.

This case is before the Court on Defendant Lockheed's Motion for Summary Judgment [# 52–1]; Plaintiff's Motion for Partial Summary Judgment [# 54–1]; the Motion for Summary Judgment by Defendants United States of America and the United States Department of the Air Force (collectively "the United States") [# 55–1]; Defendant Lockheed's Second Motion to Compel [# 57–2]; the United States' Motion to Extend Time to File a Motion to Compel [# 58–1]; and Defendant Lockheed's Motion to Exclude [# 70–1].

Prior to this Order, Defendant Lockheed withdrew its first Motion to Compel [# 44–1], its first Motion for Summary Judgment [# 48–1], and its Motion to Take Additional Discovery [# 57–1]. In addition, a joint motion to reopen discovery [# 73–1] was rendered moot when this Court signed a consent order that provided for additional discovery following the disposition of the various motions for summary judgment. Accordingly, the clerk is **DIRECTED** to terminate these motions.

Plaintiff has indicated that it does not oppose the United States' Motion to Extend Time to File a Motion to Compel [# 58–1]. Accordingly, this motion is **GRANTED.**

## I. Factual Summary

This case arose from the remediation, or clean up, of a site located on Basket Creek Road in Douglas County, Georgia ("the BC site"). Plaintiff Chem–Nuclear Systems remediated this site and filed this suit in order to recover the costs of this clean-up from Defendants Lockheed, the United States, Arivec Chemicals, Inc. ("Arivec"), and Young Refining Corporation. Young Refining and Plaintiff have reached a settlement, and therefore, Young Refining has been dismissed from this case.

In April 1991, the United States Environmental Protection Agency ("EPA") issued an Administrative Order that required Plaintiff to remediate the BC site. This order, which was made pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), also required Young Refining, Continental Trading Company, and Mr. B.B. Husley to participated in the remediation. In response to this order, Plaintiff alone paid to remove a significant amount of drums, tires, and contaminated soil from the site. Plaintiff spent $7.5 million on this remediation. Plaintiff has sought reimbursement for these costs from the Superfund, and the EPA has denied this application.

In this action, Plaintiff asserts three Counts against the various defendants. In Count I, Plaintiff seeks to recover, pursuant to CERCLA § 107(a), which is codified at 42 U.S.C. § 9607(a), the full amount of the costs incurred in remediating the BC site. In Count II, Plaintiff seeks contribution from each Defendant under CERCLA § 113(f), 42 U.S.C. § 9613(f)(1), for each Defendant's proportionate share of the remediation costs. In Count III, Plaintiff asserts a claim of unjust enrichment under state law. Finally, with respect to all of these claims, Plaintiff seeks a declaration of rights.

## II. Lockheed's Motion to Compel

In its Second Motion to Compel [# 57–2], Lockheed seeks the production of two reports that private investigation firms prepared for Plaintiff. Lockheed argues that these reports contain information which is relevant to Plaintiff's claims against Lockheed.

In response, Plaintiff argues that these reports are protected as work product and that Lockheed has failed to establish the requirements for the exceptions to the work-product doctrine. Specifically, Plaintiff argues that Lockheed cannot demonstrate the lack of an alternate source for the information sought because Plaintiff has already produced the underlying facts which are contained in these reports.

A party can discover "documents and tangible things" that "were prepared in anticipation of litigation" only by showing a substantial need for the material and the inability to obtain the material from another source without "undue hardship." Fed. R. Civ. Pro. 26(b)(3). This standard applies even if an attorney did not prepare the material, and even if the material was prepared in anticipation of previous litigation. *Federal Trade Comm'n v. Grolier, Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983).

In this case, the reports are protected under the work-product doctrine. Although Lockheed arguably possesses a "substantial need" for these reports, Lockheed has not demonstrated the inability to obtain this information from another source. Therefore, Plaintiff is not required to produce these documents.

The reports at issue are protected as work product under Rule 26(b)(3). Lockheed does not dispute Plaintiff's claim that these reports, which are certainly "documents", were prepared in anticipation of prior litigation. As *Grolier* establishes, to qualify as work product, the documents need not be prepared in anticipation of the present litigation.

Second, Lockheed presents a dubious "substantial need" for these reports. Lockheed alleges that Plaintiff's other responses to discovery requests have been incomplete

and/or misleading. Therefore, Lockheed concludes that these reports are necessary to verify the facts that Plaintiff has disclosed. As Plaintiff argues, the need to verify already discovered information is a novel, and as far as this Court can determine, unprecedented example of a "substantial need." However, this Court will assume, without deciding, that Lockheed has articulated a "substantial need" for the reports.

Even if Lockheed possess a "substantial need" for these documents, however, Lockheed has not demonstrated an inability to obtain the material from another source. Plaintiff asserts that, based on the information which Plaintiff has provided, Lockheed could conduct its own investigation of the underlying facts in order to verify the information provided by Plaintiff. In support of this argument, Plaintiff notes that the United States has already attempted to contact one of the witnesses whose statements are contained in the report. Lockheed has not responded to this particular argument.

For the foregoing reasons, Lockheed's Second Motion to Compel, which includes Lockheed's motion for sanctions, [# 57–2] is **DENIED.**

### III. Lockheed's Motion to Exclude Evidence

Lockheed moves to exclude the following five categories of evidence that Plaintiff has offered in support of its Motion for Partial Summary Judgment: (1) the deposition testimony of B.B. Husley, (2) the deposition testimony of C.B.F. Young, (3) Documents listed in Chem–Nuclear's Appendix as "Exhibit P", (4) testimony from a previous toxic tort action, and (5) the expert report and testimony of Anthony Marques, who is Plaintiff's expert.

Resolving Lockheed's evidentiary objections is unnecessary at this point. First, in ruling on the various motions for summary judgment, this Court did not rely on the depositions of Mr. Hulsey or Mr. Young; the documents in Plaintiff's "Exhibit P"; or testimony from the previous action. In addition, although this Court considered Mr. Marques' report, this Court did not rely on Mr. Marques' conclusion, which is the focus of Lock-

heed's motion to exclude, that the waste "handled" by Lockheed was similar to the waste discovered in the BC site.

Accordingly, Lockheed's Motion to Exclude [# 70–1] is **DENIED.** Of course, when this case goes to trial, Lockheed may renew the objections raised in this motion.

### IV. Motions for Summary Judgment

#### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in his favor....'" *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credibility determinations. *Hairston v. Gainesville Sun Publ. Co.,* 9 F.3d 913, 919 (11th Cir.1993), *rh'g denied,* 16 F.3d 1233 (1994) (en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the moving party's responsibility varies depending upon which party bears the burden of proof at trial on the issue in question.

For issues upon which the moving party bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim on that legal issue.

It must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. If the moving party makes such a showing, it is entitled to summary judgment unless the non-moving party comes forward with significant, probative evidence demonstrating the existence of an issue of fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (quoting *Four Parcels*, 941 F.2d at 1437–38).

On the other hand, when the non-moving party bears the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim. Instead, the moving party may simply point out to the district court that there is an absence of evidence to support the non-moving party's case on the issue in question. *Id.* at 1115–16. Of course, the moving party may offer evidence to affirmatively negate a material fact upon which the non-movant has the burden and which is essential to its claim. In either case, the non-moving party may not rely upon allegations or denials in the pleadings, but instead must respond with sufficient evidence to withstand a directed verdict motion at trial. Fed.R.Civ.P. 56(e); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994) (citing *Fitzpatrick*, 2 F.3d at 1116–17).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An award of summary judgment requires that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or not significantly probative. *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.*, at 248, 106 S.Ct. at 2510.

**B. Defendants' Motions for Summary Judgment on Count I**

The United States argues that it is entitled to summary judgment on Count I of the complaint because Plaintiff cannot, as a matter of law, pursue a claim for "cost recovery" under CERCLA § 107, 42 U.S.C. § 9607. The United States argues that as a "potentially responsible party" ("PRP"), Plaintiff can only pursue claims for contribution under CERCLA § 113, 42 U.S.C. § 9613.

Conversely, Plaintiff argues that it can maintain both claims. On a general level, Plaintiff argues that CERCLA §§ 107 and 113 represent distinct theories of recovery which can be maintained by "any persons"— including PRPs. Alternatively, Plaintiff reasons that even if § 113 represents an exclusive remedy for parties who admit to, or have been found liable for, the contamination at issue, a PRP that denies any liability for the contamination is not limited to a § 113 claim for contribution.

█ Despite Plaintiff's well reasoned arguments, recent Eleventh Circuit precedent establishes that Plaintiff cannot maintain a "cost recovery" action under CERCLA § 107, 42 U.S.C. § 9607. *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489 (11th Cir.1996). First, *Redwing* expressly holds that a § 107 claim for cost recovery is available only to an "innocent owner" of contaminated property. Second, this broad holding implicitly rejects Plaintiff's second argument and stands for the proposition that CERCLA § 113 represents a PRP's exclusive remedy to recover remediation costs even if the PRP denies liability for the contamination.

In the Eleventh Circuit, only "an innocent party to the contamination" can maintain an action for cost recovery under § 107. *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996). In *Redwing*, the plaintiff was the original owner of a site that subsequent owners discovered was contaminated. *Id.* at 1494. The plaintiff denied liability for the contamination under CERCLA, but nonetheless entered into a consent decree with the EPA in which the plaintiff agreed to remediate the site. *Id.* at 1495. After spending $1.9 million to clean up the site, the plaintiff filed claims under both §§ 107 and 113 to recover these costs from the subsequent owners of the property. *Id.*

The Court of Appeals concluded, *inter alia*, that the plaintiff could only pursue a contribution claim under § 113. *Id.* at 1496. Specifically, the court found that "to bring a cost recovery action based solely on § 107(a) Redwing would have to be an innocent party to the contamination of … " the site at issue. *Id.* at 1496. The court noted that the plaintiff's consent orders with the EPA "disavowed" liability, but concluded the plaintiff could not deny its participation in the contamination of the property. *Id.*

In this case, both the factual background and arguments are similar to those addressed in *Redwing*. As was the case in *Redwing*, Plaintiff has remediated the site and asserts both claims for contribution and full-cost recovery against the various defendants. In addition, like in *Redwing*, Plaintiff denies liability under CERCLA but does not assert that it was an innocent owner of the property. Therefore, based on *Redwing*, Plaintiff cannot maintain an action under § 107 of CERCLA.

Although the United States was the only Defendant which argued that Plaintiff could not maintain a § 107 claim, the disposition of Count I on these grounds requires the dismissal of Count I against all Defendants. The implication of the holding in *Redwing* is that a PRP in Plaintiff's situation is not a proper plaintiff under CERCLA § 107. Therefore, in this case, Plaintiff is not a proper CERCLA § 107 plaintiff with respect to any of the Defendants. Therefore, Count I is DISMISSED with respect to all Defendants.

### C. Defendants' Motion For Summary Judgment on Plaintiff's Unjust Enrichment Claim

#### 1. The United States' Motion for Summary Judgment On Count III

The United States argues that the defense of sovereign immunity mandates the dismissal of Count III. The United States argues that it has not waived its sovereign immunity for Plaintiff's state-law unjust-enrichment claim. Therefore, the United States contends that this Court lacks jurisdiction over this claim.

The United States cannot be sued in federal court without a waiver of sovereign immunity. *Dalehite v. United States*, 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). The absence of a waiver of sovereign immunity deprives this Court of jurisdiction over claims against the United States. *Hercules Inc. v. United States*, —— U.S. ——, ——, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996).

In this case, Plaintiff's unjust-enrichment claim must be dismissed. Plaintiff has not argued that the United States has consented to be sued for unjust enrichment claims under state law, and this Court is unaware of any waivers of the United State's sovereign immunity for such claims. Accordingly, Count III of Plaintiff's complaint is **DISMISSED WITH PREJUDICE** with respect to the United States.

#### 2. Lockheed's Motion for Summary Judgment on Count III

Georgia law applies to Plaintiff's unjust enrichment claim, but Georgia law does not definitively resolve the parties' dispute. The parties agree that, under Georgia law, an unjust enrichment claim requires the plaintiff to establish the following: (1) that the plaintiff conferred a benefit on the defendant and (2) that equity requires the defendant to compensate the plaintiff for this benefit. *Engram v. Engram*, 265 Ga. 804, 463 S.E.2d 12 (1995). However, the parties also apparently agree that no court applying Georgia law has addressed an unjust enrichment claim based on facts that are similar to this case.

Despite this lack of direct authority, the majority of courts that have addressed the issue have rejected claims of unjust enrichment in the context of CERCLA §§ 113 and 107 litigation. Generally, these courts have concluded that when a PRP is under a legal duty to remediate a contaminated site, this remediation does not unjustly enrich other PRPs. *See e.g., Nielsen v. Sioux Tools, Inc.*, 870 F.Supp. 435, 443 (D.Conn.1994). In reaching this conclusion, several of these courts have cited § 106 of the Restatement of Restitution which provides that "a person,

who incidentally to the performance of his own duty ... has conferred a benefit upon another, is not thereby entitled to contribution." *In re Energy Cooperative, Inc.*, No. 92 C–2392; 1995 WL 330876 *8 (M.D.Ill. May 30, 1995); *Ciba–Geigy Corp. v. Sandoz Ltd.*, No. 92–4491, 1993 WL 668325 *8 (D.N.J. June 17, 1993); *Smith Land & Improvement Corp. v. Rapid-American Corp.*, No. 86–0116, 1987 WL 56461 (M.D.Pa. Sept.21, 1987), *rev'd on other grounds*, 851 F.2d 86 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). *But see CMC Heartland Partners v. General Motors Corp.*, 1995 WL 228946 *5 (N.D.Ill. April 14, 1995) (holding that § 106 of the restatement does not apply where the plaintiff acted pursuant to a legal duty that the plaintiff shared with the defendant).

■ In this case, Plaintiff cannot pursue a claim for unjust enrichment against Lockheed. Plaintiff does not dispute that, as was the case in *Nielsen* and *Energy Cooperative*, it remediated the BC site based on a legal duty which was created by an EPA administrative order. Therefore, similar to the conclusions reached in these cases, even assuming that Lockheed benefited from Plaintiff's remediation, Plaintiff cannot purse an unjust enrichment claim because this benefit accrued by virtue of Plaintiff's performance of its own legal duty.

Finally, even the *CMC* decision, which allowed an unjust enrichment claim in the context of CERCLA litigation, is distinguishable from the present case. In *CMC*, the court held that a plaintiff who remediated a contaminated cite could pursue an unjust enrichment claim against the present owner of the site. However, in *CMC*, both the plaintiff and the defendant had been subject to the administrative order that precipitated the plaintiff's remediation. Accordingly, the court concluded that, under § 81 of the Restatement of Restitution, a person who disproportionately discharges his or her portion of a shared legal duty can pursue an unjust enrichment claim against the person who shared the duty. Conversely, in this case, Lockheed was not named in the EPA's administrative order. Thus, when Plaintiff remediated the BC site, Plaintiff discharged a burden that Lockheed did not share.

For the foregoing reasons, Lockheed's Motion for Summary Judgment is **GRANTED** on Count III of the complaint.

### D. Motions for Summary Judgment by Defendants Lockheed and the United States on Count II, and Plaintiff's Motion for Partial Summary Judgment Against all Defendants

#### 1. Introduction

All of the remaining Motions for Summary Judgment turn on the same issue. The parties agree on the elements that CERCLA § 107 requires Plaintiff to establish in order to obtain contribution under CERCLA § 113. The parties also agree that only one of these elements is in dispute—whether Defendants deposited, or "arranged" for the deposit, of hazardous waste in the BC site.

Ironically, the parties also agree that no genuine factual dispute exists regarding this issue. Defendants Lockheed and the United States argue that the summary judgment record would not allow a reasonable jury to conclude that either Defendant deposited hazardous waste in the BC cite. Conversely, Plaintiff argues that the summary judgment record would require a reasonable jury to conclude that Defendants Lockheed and the United States deposited hazardous waste in this site.

On this final point, the Court disagrees with all three parties. Based on the summary judgment record, a reasonable jury could find that none of the hazardous material "released" at the BC site originated with Lockheed or the United States. On the other hand, a reasonable jury could find that the hazardous material originated with either, or both, of these Defendants.

#### 2. The Elements for Liability Under CERCLA § 107

In order to be entitled to contribution under CERCLA § 113, Plaintiff must establish that Defendants are subject to liability under CERCLA § 107, 42 U.S.C. § 9607(a). Therefore, Plaintiff must establish the following four elements: (1) that the BC site is a "facility" as defined by 42 U.S.C. § 9601(9),

(2) that there was a release, or threatened release, of hazardous materials at the BC site, (3) that the release or threatened release caused Plaintiff to incur costs, and (4) that Defendants are "potentially responsible persons" ("PRPs") as defined in CERCLA § 107, 42 U.S.C. § 9607(a)(1)–(4). 42 U.S.C. § 9607; *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489 (11th Cir.1996); *United States v. Amtreco, Inc.* 809 F.Supp. 959 (M.D.Ga.1992). CERCLA § 107 establishes the following four general classes of PRPs: (1) the owners of the facility, (2) the operators of the facility, (3) those who "arranged" for the disposal of the waste, and (4) the transporters of the waste to the facility. 42 U.S.C. § 9607(a)(1)–(4); 4 William H. Rodgers, Jr., *Environmental Law* § 8.12 (1992).

In this case, the parties agree that only a fairly narrow issue is in dispute. Defendants concede that the BC site was a "facility" as defined by CERCLA and that a release of hazardous materials occurred at the site. Furthermore, although Defendants dispute the amount of the costs that Plaintiff incurred in the remediation of the site, they do not dispute that Plaintiff in fact incurred costs because of the release. Finally, Plaintiff does not assert that Defendants were the owners of the BC site, the operators of the "facility", or the transporters of the hazardous waste. Therefore, Defendants are entitled to summary judgment unless Plaintiff has produced evidence that would allow a reasonable jury to conclude that Defendants "arranged" for the disposal of hazardous material at the BC site. Conversely, Plaintiff is entitled to summary judgment only if the summary judgment record mandates a finding that Defendants "arranged" for the deposit of hazardous material at the BC site.

### 3. The Parties' Arguments

In support of its Partial Motion for Summary Judgment and in opposition to Lockheed's Motion for Summary Judgment, Plaintiff argues that for a number of years, Lockheed sent various waste materials to Defendant Arivec. Plaintiff contends that these materials were similar to the materials recovered at the BC site. Furthermore, Plaintiff claims that Arivec disposed of its

customers' waste, including waste from Lockheed, at the BC site. Therefore, Plaintiff argues that the summary judgment record establishes that Lockheed "arranged" for the disposal of its hazardous waste at the BC site. Alternatively, Plaintiff argues that the evidence of Lockheed's contributions to the hazardous materials is sufficient to preclude summary judgment for Lockheed.

Lockheed disputes that it contributed to the waste discovered at the BC site. Lockheed admits that it delivered jet fuel and "waste solvents" to Arivec over the course of several years. Lockheed further concedes that Arivec might have disposed of some of Arivec's by-produces at the BC site. However, Lockheed contends that no evidence exists which establishes a link between the waste that Lockheed sent to Arivec and the hazardous materials found in the BC site.

In support of its position, Lockheed argues that Arivec only deposited a very limited type of waste at the BC site. First, Lockheed notes that Arivec was in the business of recycling, not waste disposal. Thus, Lockheed argues that Arivec only disposed of the by-products of its recycling process. Lockheed has introduced evidence that Arivec's recycling of jet fuel produced no by-products. Further, although Arivec's distillation of its customer's waste solvents produced a by-product, Lockheed argues that these by-products were not deposited at the BC site.

Accordingly, Lockheed contends that certain drums which Arivec used in its recycling process represent the only possible waste that Arivec could have deposited in the BC site. The parties agree that Arivec used metal drums to collect solvents from its customers and then transported these drums to their recycling center. The parties further agree that at the recycling center, Arivec pumped the solvents out of the drums in order to prepare the drums to be sold to "drum reconditioners." However, it is undisputed that some of the solvents would settle to the bottom of the drums and form a sludge that is called "paint bottoms." The drum reconditioners would not accept drums with "paint bottoms." Therefore, based on these undisputed facts, Lockheed argues that the drums which the reconditioners would

not accept were the only drums that Arivec could have disposed of at the BC site.

Based on this premise, Lockheed asserts that Plaintiff has produced no evidence which would allow a jury to conclude that any of these drums contained waste from Lockheed. In other words, Lockheed first contends that the drums with "paint bottoms" represent the only possible waste from Arivec which could have been disposed at the BC site. Therefore, because no evidence exists that establishes a connection between these drums and Lockheed's waste, Lockheed contends that it is entitled to summary judgment.

Similar to Lockheed's argument, the United States argues that it is entitled to summary judgment on Count II because no evidence exists which establishes that hazardous materials produced by the United States were deposited in the BC site. In support of this argument, the United States asserts that its records indicate that materials originating from Dobbins Air Force Base were sold to Arivec on only two occasions. The United States argues that both of these sales occurred after the BC site had been closed. Therefore, the United States argues that Plaintiff lacks evidence which establishes that the United States "arranged" for the disposal of hazardous waste at the BC site.

Finally, in opposition to Plaintiff's Motion for Partial Summary Judgment, Arivec argues that Plaintiff has not produced sufficient evidence that it deposited hazardous materials in the BC site. Arivec admits that evidence supports the conclusion that Arivec employees dumped a number of drums which may have contained "paint bottoms" in the BC site. However, Arivec argues that no evidence indicates that these drums contained hazardous materials as defined in CERCLA.

### 4. Defendants' Alleged "Arranger" Liability

In order to establish "arranger" liability under CERCLA § 107, the plaintiff need only establish a "minimal causal nexus" between the defendant's waste and "released" substances. *United States v. Marisol Inc.,* 725 F.Supp. 833, 840 (M.D.Pa.1989); *United States v. Bliss,* 667 F.Supp. 1298

(E.D.Mo.1987) ("[The] structure of CERCLA and its legislative history make it clear that traditional tort notions, such as proximate cause, do not apply."). Specifically, the plaintiff must establish that the defendant's waste was deposited at the site and that hazardous substances "similar" to those contained in the defendant's waste remained at the site when the "release" occurred. *U.S. v. Monsanto Co.,* 858 F.2d 160, 169 (4th Cir. 1988) ("Absent proof that a generator defendant's specific waste remained at a facility at the time of release, a showing of chemical similarity between hazardous substances is sufficient.") *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

In some cases, the "minimal causal nexus" that is required to establish "arranger liability" is even more relaxed. *United States v. Distler,* 803 F.Supp. 46, 52 (W.D.Ky.1992). For example, in *Distler,* the defendants admittedly shipped their waste to Mr. Distler whose company admittedly deposited hazardous waste in the contaminated sites. The defendants moved for summary judgment arguing that no "specific evidence" indicated that their waste was ultimately deposited in the contaminated site. *Id.* at 51–52. The court in *Distler* held that "[w]here a particular generator's waste becomes unidentifiable due to commingling or mismanagement at one location, and unidentifiable waste is later removed to a release site containing the same type of waste, the causal nexus is satisfied." *Id.* at 52. The court noted that the evidence established that the defendant's waste had been transported to an intermediate site where the waste was commingled with waste from Mr. Distler's other customers. *Id.* The court then noted that the evidence established that a certain amount of the commingled waste was transported to the contaminated sites. *Id.* Accordingly, the court concluded that this evidence precluded summary judgment for the defendants. *Id.*

Other courts have discussed similar situations in terms of presumptions and burden shifting. For example, in *United States v. Bliss,* 667 F.Supp. 1298 (E.D.Mo.1987), Mr. Bliss, who ran a waste disposal business, stored his customers' waste in one tank. Eventually, this commingled waste contami-

nated a number of sites which the plaintiff (the EPA) remediated. The defendants, who had sold their waste to Mr. Bliss, argued that the plaintiffs failed to rebut the possibility that all of the defendant's waste had been removed from Mr. Bliss' tanks before the "release" occurred.

The court rejected this argument. Specifically, the court held that a "presumption of causation" arises when the plaintiff produces evidence that establishes the following: the defendants delivered waste to a third party, the third party commingled the defendants' waste with other waste, and the commingled waste was "released." *Id.* at 1311 n. 12. In reaching this conclusion, the court recognized that, as a matter of policy, the generator of the waste "bears the risk that its wastes will become unidentifiable." *Id.* at 1310. Because the defendants did not rebut this presumption, the court awarded summary judgment to the plaintiff. *Id.* at 1311.

■ In this case, genuine factual disputes preclude the resolution of this issue on summary judgment. Regardless of whether viewed as satisfying the requisite causal nexus or as shifting the burden to defendants, the evidence is sufficient to allow a reasonable jury to conclude that waste which originated with Lockheed and/or the United States was deposited at the BC site. On the other hand, unlike in *Bliss*, the evidence is not sufficiently strong to preclude a finding that neither Defendants' waste was deposited in the BC site.

First, the evidence indicates that both Lockheed and the United States delivered waste to Arivec. Lockheed admits that over the course of several years it delivered drums filled with waste solvents to Arivec. Similarly, with respect to the United States' shipments to Arivec, Mr. Parivechio Jr., who worked for Arivec for over thirty years, testified that between 1968 and 1970 the Air Force sent drums filled with solvents to Arivec. Although the United States' evidence calls into question the accuracy of Mr. Parivechio's recollections, such issues are for the jury to decide.

Second, the parties agree about the general procedures that Arivec employed in handling its customer's waste. After receiving drums filled with solvents, Arivec cleaned and sold many of these drums to "drum reconditioners." However, Arivec stored, and ultimately disposed of, the drums with unremovable "paint bottoms."

Third, Arivec "commingled" the drums of its various customers. Arivec apparently stored all of the drums with "paint bottoms" at one location. No evidence exists that Arivec separated these drums according to where the drum originated or that Arivec maintained records of which drums came from which customers. Therefore, once Arivec stored the drums, Defendants' drums became largely indistinguishable from the drums of Arivec's other customers.

Fourth, the evidence would allow a reasonable jury to conclude that Arivec deposited an uncertain number of the "commingled" drums at the BC site. Mr. Nunnally, a former Arivec plant manager, testified that he recalled dumping at least 100 drums in the BC site. Of these drums, Mr. Nunnally estimated that about half contained dried "paint bottoms."

Finally, the hazardous materials that were "released" at the BC site are "similar" to the materials that Defendants sent to Arivec. As discussed above, evidence indicates that Arivec employees deposited drums with "paint bottoms" in the BC site. These "paint bottoms" were actually unremovable, or "stubborn", sludge at the bottom of the drums that were used to transport waste solvents. The evidence suggests that, in general, these solvents contained a variety of CERCLA hazardous substances including toluene, tetrachloroethylene, and trichloroethylene. The Defendants do not dispute that these hazardous substances were discovered at the BC site.

Based on the foregoing evidence, viewed in the light most favorable to Plaintiff, sufficient evidence exists to preclude summary judgment for Defendants. As was the case in *Bliss* and *Distler*, Defendants delivered wastes to a third party. The third party "commingled" Defendants' waste and deposited some of this commingled waste in the site at issue. Finally, the substances "released" at the contaminated site were similar

to the waste that was originally delivered to the third party.

Lockheed argues that Plaintiff cannot rely on the burden-shifting mechanisms recognized in *Bliss* because no "commingling" of "paint bottoms" occurred. Lockheed begins with the premise, which appears undisputed, that the hazardous material in the "paint bottoms" represent the only released hazardous material which plausibly can be connected to Lockheed. Based on this premise, Lockheed reasons that Arivec collected drums of waste solvents from its individual customers and then removed as much of the waste solvent as possible from each individual drum. Lockheed argues that any drums with unremovable "paint bottoms" were drums that originated with a specific, individual Arivec customer. Therefore, Lockheed argues that the "paint bottoms", which included the hazardous material at issue, always remained in the separate (i.e. not commingled) drums of Arivec's individual customers.

This argument fails to appreciate the rationale behind the *Bliss* and *Distler* decisions. The actual commingling of the hazardous substances was not the operative event in these cases. Instead, the commingling of various generators' waste was significant because commingling necessarily renders impossible determining the specific generator of the material. *See United States v. Wade*, 577 F.Supp. 1326, 1332 (E.D.Pa.1983) ("[S]cientific technique has not advanced to a point that the identity of a generator of a specific quantity of waste can be stated with certainty."). Whether this evidentiary quandary arises because the hazardous material itself is commingled or because various drums containing the hazardous material become indistinguishable is immaterial. In both types of "commingling cases", the policy rational remains the same—a generator "bears the risk that its waste will become unidentifiable."

In addition to the foregoing, Plaintiff has produced other evidence that establishes a connection between waste generated by the United States and the "release" at the BC facility. Specifically, Plaintiff's expert testified at his deposition that several of the drums removed from the BC site bore mark-

ings that were similar to markings used by the U.S. Department of Defense. Although the United States argues that this evidence is inconsistent with evidence from a prior proceeding, such arguments are relevant to the weight of the evidence and can be raised at trial. Accordingly, even without relying on the relaxed causation requirement under the *Distler* decision or the burden shifting of the *Bliss* decision, this evidence would preclude summary judgment for the United States on Plaintiff's contribution claim.

Finally, as discussed above, genuine factual disputes exist regarding Arivec's status as an "arranger". Although no evidence contradicts Mr. Nunnally's testimony that he deposited drums in the BC site, a jury is free to disbelieve this testimony. Likewise, a jury could find that Plaintiff failed to establish, by a preponderance of the evidence, that the drums contained hazardous materials.

## V. Conclusion

Defendant Lockheed's Motion for Summary Judgment [# 52–1] is **GRANTED** with respect to Count III of the complaint and is otherwise **DENIED**. Plaintiff's Motion for Partial Summary Judgment [# 54–1] is **DENIED**. The Motion for Summary Judgment by Defendants the United States [# 55–1] is **DENIED**. Count III of the Complaint is **DISMISSED WITH PREJUDICE** with respect to Defendant United States. Count I of the complaint is **DISMISSED WITH PREJUDICE** with respect to all Defendants.

Lockheed's Second Motion to Compel [# 57–2] is **DENIED**. Defendant Lockheed's Motion to Exclude [# 70–1] is **DENIED**. The United States' Motion to Extend Time to File a Motion to Compel [# 58–1] is **GRANTED**.

The clerk is **DIRECTED** to **TERMINATE** the following motions: Lockheed's First Motion to Compel [# 44–1], Lockheed's First Motion for Summary Judgment [# 48–1], Lockheed's Motion to Take Additional Discovery [# 57–1]; and the Joint Motion to Reopen Discovery [# 73–1].